UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **GREGORY L. DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. _____** |
| **vs.** | ) | |
| | ) | |
| **COMCAST, MIKE LAM, ANTHONY** | ) | |
| **DOUGLAS, AND JAYLON DEMPS.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## **COMPLAINT**

## **NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 (e) *et seq.* ("Title VII"), Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981 (a), and the Civil Rights Act of 1866, 42 U.S.C. §1981 to correct unlawful employment practices on the basis of race and to provide appropriate relief to Gregory Davis (hereinafter "Plaintiff"). Plaintiff alleges that COMCAST (hereinafter "Comcast"), Mike Lam, Anthony Douglas and Jaylon Demps have engaged in an ongoing pattern of race discrimination against African American employees at its Peachtree City Facility's Tech Site ("Peachtree City tech site"),

located at 306 Dividend Dr, Peachtree City, Georgia 30269. That site services and caters to customers located at Peachtree City. The Peachtree City tech site is predominately led by African American people.

Defendants discriminated against Plaintiff and African American employees at the Peachtree City tech site by: 1) forcing the Plaintiff to be transferred to Peachtree City despite knowing that the site had been failing in performance; 2) requiring that the Plaintiff must "make a change" in the leadership team, predominantly composed of African Americans, otherwise the Plaintiff would fail; 3) failing to provide training and to promote Peachtree City African American employees into higher level positions; 4) failing to provide equal pay and fair evaluations to Peachtree City African American employees; 5) subjecting Peachtree City African American employees to discriminatory discipline and terminations; and 6) subjecting Peachtree City African American employees to a hostile work environment by: referring to African American employees in a racially derogatory manner, applying workplace rules and regulations in a racially biased manner, excluding African American employees from special projects as compared to similarly situated non-African American employees, and instilling fear of retaliation amongst African American employees in voicing out their true opinions when conducting employee surveys.

In response to these discriminatory practices, Peachtree City African American employees made repeated complaints about their own treatment and would attempt to file memos of Corrective Actions for company policy violations with the Human Resources Department. In response, Comcast did nothing to remedy the discrimination. In fact, Jaylon Demps, the Director of Human Resources showed inconsistency in approving Corrective Action memos for African American employees, despite the use of the required template.

## JURISDICTION AND VENUE

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, § 1337 and § 1343. This action is authorized and instituted pursuant to Section 706 (f) (1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, Section 102 of the Civil Rights Act of 1991 and Section 1981 of the Civil Rights Act of 1866, as amended.

2. Venue is proper in the United States District Court for the Northern Division of Georgia pursuant to 28 U.S.C. § 1391, because the unlawful conduct alleged herein was committed and continues to occur within the boundaries of the Northern Division of Georgia.

## PLAINTIFF

3.  Plaintiff is an adult African American male and a resident of Georgia.

4.  Plaintiff started employment with Comcast on December 27, 199 until he was unlawfully terminated on May 7, 2021.

5.  On October 6, 2021, Plaintiff filed Charges of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination against race, color, and natural origin and retaliation against Comcast (EEOC Charge herewith attached and marked as Exhibit "A").

6.  Upon failed mediation proceedings with the EEOC, Plaintiff requested for and was issued a Notice of Right to Sue by the EEOC on May 4, 2022 (Exhibit "B").

## DEFENDANTS

7.  Defendant Comcast employs approximately 189,000 persons worldwide, has its Headquarters in Pennsylvania and is incorporated under the laws of that state.

8.  Comcast is the largest cable operator and home internet service provider in the United States, providing both residential and commercial services in 40 states and the District of Columbia.

9.  Comcast operates 39 facilities in Atlanta, Georgia, including the Stone Mountain Facility, and the Peachtree City Facility, among others.

10. The Peachtree City Facility provides cable services to customers within this largest city located in Fayette County.

11. In the fiscal year 2021, Comcast's United States revenues were 116.39 billion dollars, upon information and belief.

12. At all times pertinent to this action, Comcast has been doing business in Georgia by supplying services to customers and operating multiple offices and warehouses in Georgia.  At all relevant times herein, Comcast has employed over five hundred individuals.

## HISTORY OF DISCRIMINATION AT THE PEACHTREE CITY FACILITY AND FACTUAL BACKGROUND

13. Plaintiff was employed by Comcast for 21 years and 4 months. He started his employment with Comcast on December 27, 1999 with the position of Technician. Due to his impressive performance, he earned leadership roles and held the position of manager at Comcast's Stone Mountain facility, up until sometime in the year of 2018 when he was transferred to manage the Peachtree City tech site.

14. Since at least 2016, the Peachtree City tech site was internally known to be difficult to manage, had a low performance and failing leadership.

15. Employees at the Peachtree City tech site have complained repeatedly about disparate treatment as compared to other employees or departments comprised of Caucasians in the other Comcast Departments.

16. Employees at Comcast's Peachtree City tech site complained of, or managers, or Plaintiff observed that:

   a. Mike Lam and the Senior Leadership Team, ("SLT team") would seldom visit the Peachtree City tech site, and could not properly observe the daily business operations and defects that needed to be improved;

   b. Mike Lam would often give negative comments about the predominantly African American tech site, such as "We have the wrong culture in place down there";

   c. When the SLT team would visit the site, they would only cater and mingle with the predominantly Caucasian Maintenance team;

   d. While being under Mike Lam's leadership, Plaintiff have been made fun of because of his very dark-skinned complexion by several managers during Mike Lam's staff meeting, but he would not correct nor stop the managers from doing so;

   e. Anthony Douglas, VP of operations, made several comments that

Plaintiff was a "unicorn" and would make comments in during meetings held with the Atlanta leadership team and the HR team which made Plaintiff feel uncomfortable;

f. When Anthony Douglas would visit the Peachtree City tech site, he would always be in a bad mood and treat the Peachtree City tech site leadership team rudely during deep dive sessions;

g. Peachtree City technicians were issued unclear KPI performance metrics which led to reduced promotional and/or training opportunities, negative evaluations, less pay, and, in some cases, termination;

h. Jaylon Demps, Director of HR, made comments stating that she did not like dark skinned men, "because they think they are better than everyone else."

i. Ms. Hemps would also pressure African American leaders to come back from their Leave of Absences and threatened their jobs if they did not return in a certain timeframe.

j. Scores given by African American employees in Employee Surveys were never truthful. From experience, African American employees who would step up to give their honest scores in the employee survey would be ostracized, singled-out and identified as unfocused leaders/ not fit for

the business. From then on, African American employees have been fearful to disclose their true feelings for fear of retaliation.

17. Prior to Plaintiff's transfer in 2018, the Peachtree City tech site was previously managed by Jesse Hughes, who was hired by Mike Lam. Mr. Hughes failed to manage and effectively improve the Peachtree City tech site's condition, but instead of being terminated for his failed leadership, he was transferred to Comcast's Stone Mountain facility.

18. In turn, Mike Lam tasked the Plaintiff to manage the Peachtree City tech site, claiming that it was due to Plaintiff's background in maintenance. Plaintiff stated his concerns that he would not be successful if given a leadership role in the Peachtree City tech site because it was historically known to be difficult to manage. Despite his concerns, Plaintiff did his best to manage the site.

19. From 2018 to 2020, Mike Lam harass the Plaintiff by pressuring him with repeated questioning as to why the leadership team at the Peachtree City was still there and told the Plaintiff, "you need to make a change, or else you will fail."

20. Sometime August 2020, Plaintiff was arbitrarily subjected to a Performance Improvement Plan until December 2020 due to leadership concerns.

21. Several PIP meetings were held by Mike Lam, Anthony Douglas together with

Plaintiff and his team, and Plaintiff received feedback during those meetings of his good performance and leadership, as well as the improvement of the Peachtree City site's condition. It was not made known to the Plaintiff that he was still under the PIP after December 2020 despite his repeated inquiries, nor was he informed that there were problems with his performance and leadership.

22. On or about May 7, 2021, Plaintiff was served a Separation Notice by Jaylon Demps. The reason for Plaintiff's termination stated in the Separation Notice was, "Involuntary Separation – Performance." Plaintiff was not given any severance pay.

## DISCRIMINATION IN WORKING TERMS AND CONDITIONS

23. Employees at Comcast's Peachtree City tech site are overwhelmingly African American.  The customers served by the Peachtree City tech site employees are predominantly Caucasian.


## I.  FAILURE TO PROVIDE EQUAL WORKING CONDITIONS

24. The Peachtree City tech site employees and leaders repeatedly complained about discrimination in their working conditions and no action was taken.

25. Peachtree City tech site employee and leaders were repeatedly told that the

facility would be repaired and renovated; however, no improvements occurred until Plaintiff's termination from Comcast.

## II. FAILURE TO PROVIDE EQUAL TRAINING AND PROMOTIONAL OPPORTUNITIES

26. Peachtree City tech site African American employees are denied the same training opportunities as other similarly situated Comcast employees. Comcast claims in its "Diversity in Recruitment" policy that Comcast "makes significant investments in career development" which includes sending employees to "Comcast University" for training.

27. The Peachtree City tech site African American employees are denied the same opportunities to receive "Comcast University" training and special projects.

28. Upon information and belief, employees at the Stone Mountain and/or Suburban facilities are allowed to take Comcast University courses before Peachtree City tech site employees.

29. Peachtree City tech site African American employees are also denied (or are delayed in receiving) training on new or existing equipment.

30. Comcast's refusal to provide training restricts Peachtree City tech site employees' ability to progress into the next higher position and other promotional opportunities.

31. Upon information and belief, employees at the Stone Mountain and/or Suburban facilities are allowed to take Comcast University courses before Peachtree City tech site employees.

32. Peachtree City tech site African American employees are also denied (or are delayed in receiving) training on new or existing equipment.

33. Comcast's refusal to provide training restricts Peachtree City tech site employees' ability to progress into the next higher position and other promotional opportunities. Such lack of training and proper equipment form part of the major reasons why Peachtree City tech site is failing in performance.

34. In many instances, Peachtree City tech site African American employees no longer even apply for promotions because of a) the wide-spread belief that they will not be promoted because of their race; and/or b) because they are not aware of any promotional opportunities.


### III.       FAILURE TO PROVIDE EQUAL PAY AND EVALUATIONS

35. African American Line Technicians and Service Technicians at the Peachtree City tech site are subject to discrimination in their evaluations and therefore in their overall pay.

36. Line Technicians are evaluated in part on their abilities to fix outages and other

technical problems; Comcast's failure to provide Peachtree City Line Technicians with necessary equipment affects their ability to receive positive performance evaluations, pay raises and bonuses.

37. Service Technicians are evaluated in part on the number of times they have a "repeat" service visit—which is required after equipment is installed in a customer's home but is not working properly. Comcast's failure to provide Peachtree City Service Technicians with necessary equipment affects their ability to receive positive performance evaluations, pay raises, and bonuses.

38. Many Service Technicians at the Peachtree City facility were placed on "Performance Improvement Plans" because of the need to make repeat visits to repair faulty equipment.

## IV.    DISCRIMINATORY DISCIPLINE AND TERMINATIONS

39. Any of these defects, or other defects in line service, can result in the customer's cable services not working properly, which prompts a "repeat" call to the customer's residence.

40. Each repeat call is counted against the technician who installed the equipment or provided the service, even if the problem was the result of defective equipment.

41.   If any technician does not meet the goals set by Comcast, limiting the number of repeat calls any technician can receive, the technician is issued discipline in the form of a "Performance Improvement Plan ("PIP")." When a technician is put on a PIP, he is not eligible for promotions, certain training, certain pay raises, and can be terminated.

42.   Peachtree City African American employees are also subject to other types of discriminatory discipline by Comcast through the targeting of certain employees' work in order to find defects; issuing other forms of discipline that are outside the employees' control; and directing managers to "get rid of" certain employees, especially employees that have complained of discrimination or other terms of employment.

## HOSTILE WORK ENVIRONMENT/RACIAL HARASSMENT

### Racial Harassment of Comcast Employees

43.   African American employees are subjected to a racially hostile working environment by, among other things, being subjected to racially derogative language by non-African American managers and being subjected to disparate terms and conditions as described above.

44. The Plaintiff was often made fun off by several managers during Mike Lam's staff meeting but Mike Lam would not correct or stop the leaders from making the jokes.

45. Anthony Douglas, VP of Operations, has made several comments that, Plaintiff was a "unicorn" and would make comments in meetings with the Atlanta leadership team including the HR team which made Plaintiff feel uncomfortable.

46. When Anthony Douglas would visit Peachtree City tech site he would always be in a bad mood and treat Plaintiff's leadership team very rudely during deep dive sessions. On one occasion, Plaintiff and a colleague was in an office with Anthony Douglas trying to have a conversation, but Anthony Douglas would not even acknowledge them being in the same room. There have been several African American leaders who have been terminated or resigned under Anthony Douglas' leadership compared. Which he would state that the Atlanta region was full of unfit leaders. Anthony Douglas would only cater to the NW system due to the leadership team is 90% Caucasian. Stating they are better leaders.

47. This treatment interfered with the African American employees' ability to perform their jobs.

48. Jaylon Demps, Director of HR, made comments stating that she did not like

dark skinned men because, "they think they are better than everyone else." This explains why she was very inconsistent when it comes to approving Corrective Action forms ("CA memos") submitted to her for company-policy violations. Ms. Hemps would approve some Caucasian leaders' CA forms instantaneously, but would procrastinate on approving or rejecting others, if the CA forms were submitted by African American leaders- despite their compliance with the company's standard template.

49. Jaylon Hemps would also pressure African American leaders to come back from their Leave of Absences and threatened their jobs if they did not return in a certain timeframe.

50. When the SLT team would visit the Peachtree City facility, they would only cater and mingle with the predominantly white Caucasian Maintenance team. Jaylon Demps was made aware of this observation from the other African American employees, but did not say anything.

51. Even after these complaints, Comcast refused to correct its discriminatory practices.

52. Scores given by African American employees in Employee Surveys were never truthful. From experience, African American employees who would step up to give their honest scores in the employee survey would be ostracized, singled-

out and identified as unfocused leaders/ not fit for the business. From then on, African American employees have been fearful to disclose their true feelings for fear of retaliation.

## COUNT ONE: DISCRIMINATION AGAINST THE PLAINTIFF IN VIOLATION OF SECTION 1981

53.    Plaintiff repeats and re-alleges each and every allegation above as if set forth herein in full.

54. Comcast has intentionally discriminated against Plaintiff in violation of Section 1981 by engaging in the following acts: 1) forcing Plaintiff to be transferred to the Peachtree City tech site, already known historically to be failing in performance; 2) forcing Plaintiff to cause the removal of the African American leadership in the Peachtree City tech site, as a condition to keep his employment; 3) failing to provide training to enhance learning and performance, and to assign special projects to Plaintiff and other African American leaders in the Peachtree City tech site; 4) failing to provide fair evaluations to Plaintiff and other African American employees the Peachtree City tech site; 5) subjecting Plaintiff and other African American employees to discriminatory discipline and terminations; and 6) subjecting Plaintiff and other

16

African American employees to hostile work environment by: referring to Plaintiff and other African American employees in a racially derogatory manner, applying workplace rules and regulations in a racially biased manner, non-action on grievances raised by the Plaintiff and fellow African American employees in relation to discrimination, retaliation and threatening retaliation to African American employees who attempt to voice out issues of racial discrimination in employee surveys, instructing African American employees to follow different protocol from similarly situated non-African American employees during duly authorized leaves of absence,  and failing to provide African American employees with facilities that would allow equal levels of service as to the facilities of non-African American employees.

## COUNT TWO:  DISCRIMINATION AGAINST THE PLAINTIFF IN VIOLATION OF TITLE VII

55.    Plaintiff repeats and re-alleges each and every allegation above as if set forth herein in full.

56. Defendants have intentionally discriminated against Plaintiff in violation of Title VII by engaging in the following acts: 1) forcing Plaintiff to be transferred to the Peachtree City tech site, already known historically to be failing in

performance; 2) forcing Plaintiff to cause the removal of the African American leadership in the Peachtree City tech site, as a condition to keep his employment; 3) failing to provide training to enhance learning and performance, and to assign special projects to Plaintiff and other African American leaders in the Peachtree City tech site; 4) failing to provide fair evaluations to Plaintiff and other African American employees the Peachtree City tech site; 5) subjecting Plaintiff and other African American employees to discriminatory discipline and terminations; and 6) subjecting Plaintiff and other African American employees to hostile work environment by: referring to Plaintiff and other African American employees in a racially derogatory manner, applying workplace rules and regulations in a racially biased manner, non-action on grievances raised by the Plaintiff and fellow African American employees in relation to discrimination, retaliation and threatening retaliation to African American employees who attempt to voice out issues of racial discrimination in employee surveys, instructing African American employees to follow different protocol from similarly situated non-African American employees during duly authorized leaves of absence, and failing to provide African American employees with facilities that would allow equal levels of service as to the facilities of non-African American employees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.  Enter a judgment that Defendants' acts and practices as set forth herein are in violation of the laws of the United States;

b.  Enter preliminary and permanent relief enjoining the discriminatory conduct necessary to end Defendants' discriminatory practices and prevent current and future harm to Plaintiff;

c.  Award Plaintiff lost wages, including back pay, front pay and lost benefits, and including, without limitation, any lost benefits that would otherwise have been available to the Plaintiff without the discrimination;

d.  Award Plaintiff compensatory and punitive damages;

e.  Award reinstatement to those Plaintiff who prove discriminatory discharge;

f.  Award Plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and

g.  Grant Plaintiff such other and further relief as this Court finds necessary and proper.

## **JURY DEMAND**

Plaintiff demand a trial by jury on all issues of facts and damages in this

action.

Respectfully submitted this 2nd day of August, 2022.

/s/ Kiera L. Harvey, Esq.

Kiera L. Harvey, Esq.

Georgia Bar No. 458471

Email: kiera.harvey@klharveylaw.com

HARVEY LAW FIRM

1201 West Peachtree St., Suite 2300

Atlanta GA 30309

Tel: 404.795.5028

Fax: 404.500.0545

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on June ___, 2022, I provided service to the person or person listed above by the following means: the CM/ECF system which will provide notification of such filing to the e-mail addresses of all counsel or record.

Respectfully submitted,

/s/ Kiera L. Harvey, Esq.

Kiera L. Harvey, Esq.

Georgia Bar No. 458471

Email:
kiera.harvey@klharveylaw.com

HARVEY LAW FIRM

1201 West Peachtree St., Suite 2300

Atlanta GA 30309

Tel: 404.795.5028

Fax: 404.500.0545

Counsel for Plaintiff

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | **410-2022-00429** |

|  |  |  |
|---|---|---|
| N/A | | and EEOC |
| *State or local Agency, if any* | | |

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Mr. Gregory L. Davis, by and through counsel, Harvey Law Firm | 4047955028 | Sept. 12, 1970 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1201 West Peachtree Street, Suite 2300, Atlanta GA 30309 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| Name | | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|---|
| COMCAST | *EEOC RECEIVED 10/06/2021* | 20+ | 4076452500 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1707 Lewis Way, Stone Mountain, GA 30083 | |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☒ COLOR   ☐ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: Aug. 2020   Latest: May. 2021

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On or about May 7, 2021, Mr. Gregory L. Davis, was terminated from his position with COMCAST on the basis of discrimination and retaliation based on his race, color, and his national origin.

Mr. Davis was employed with COMCAST for over 20 years and his impressive performance earned him leadership roles. COMCAST had a Peachtree City tech site ("site") that was internally known to be difficult to manage, had a low performance and failing leadership. COMCAST has historically placed African American people to manage this difficult site.

Prior to his termination, Mr. Davis was tasked to replace an employee who failed to effectively improve the site's condition despite Mr. Davis stating his concerns to COMCAST that he would not be successful if given a leadership role in that site. Despite his concerns, Mr. Davis did his best to manage the site.

Sometime August 2020, Mr. Davis was arbitrarily subjected to a Performance Improvement Plan ("PIP") until December 2020 due to leadership concerns. Several PIP meetings were held by Mike Lam, Anthony Douglas together with Mr. Davis and his team, and he received feedback during those meetings of his good performance and leadership, as well as the improvement of the site's condition. It was not made known to him that he was still under the PIP after December 2020, nor was he informed that there were problems with his performance and leadership.

Mr. Davis also had too many occasions of uncomfortable conversations and meetings where he experienced racial profiling and discrimination with Mike Lam, Anthony Douglas and Jaylon Demps either by them issuing discriminatory remarks towards African American people, not correcting reproachful comments made by other staff about Mr. Davis' skin color while either one of them were present, and even stating favoritism towards Caucasian employees.

Thus, the reason for the termination is not based on Mr. Davis' poor performance or leadership. COMCAST terminated Mr. Davis based on his race, color, and national origin.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my |

SARA SHEFFIELD
NOTARY PUBLIC
Henry County
State of Georgia
My Comm. Expires August 13, 2023

I declare under penalty of perjury that the above is true and correct.

_9/13/21_
Date

_____
Charging Party Signature

knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

_9/13/21_